OPINION. Black, Judge: The first issue is whether Glasgow may deduct as ordinary and necessary business expenses under section 162 of the 1954 Code[1] payments made to Carpenter in each of the years 1954, 1955, and 1956 in the annual amount of $12,499.76. As a corollary to this issue is the question whether such payments by Glasgow constitute distributions taxable as dividends to the individual petitioners in the years 1955 and 1956. The only 2 years which we have before us insofar as the individual petitioners are concerned are 1955 and 1956; we do not have the year 1954 before us as to the individual petitioners. Respondent has determined that the payments were made by Glasgow for the personal benefit of Wilson and that they were not reasonable compensation for any services rendered by Carpenter to Glasgow. He contends that the payments were made 'as part of the purchase by Wilson of Carpenter’s stock in Glasgow in 1952. That is issue 2 and we shall consider the two issues together. We do not agree that the payments were part of the purchase price for Carpenter’s stock. We think the facts, when all are considered, are to the contrary. Apparently, Wilson and Carpenter were at odds about the management of Glasgow. Each owned an equal interest in Glasgow and 2 shares were held 'by a representative of the financial institution which was backing the subdivision project. Glasgow’s earnings record for 1951 was not good. In fact it was poor considering the volume of business which was done. Early in 1952, Wilson demanded Carpenter’s resignation as president of Glasgow. Carpenter agreed to sell his stock to Wilson for approximately $20,000, a sum which was between three and seven times as much as he had paid for his interest in Glasgow in’1950.[2] Simultaneously with the sale of his stock to Wilson, Carpenter received an agreement, called an employment contract, from Glasgow providing for the payment of $12,500 for 5 years. This contract is.set out in full in our Findings of Fact. It seems clear from the record that Carpenter was inadequately compensated for his services in 1950; that he was expected to and did render services under the contract; and that under the contract he was required to devote his best interests to the benefit of Glasgow. Although executed in connection with the solution of a corporate problem, one phase of which involved the sale of Carpenter’s stock, the employment contract was given, not as part of the purchase of the stock, but to effectuate the removal of Carpenter as chief executive of Glasgow, to compensate him for past services, and to secure such future relations, by way of active performance of services and/or passive forbearance from competition, as might benefit Glasgow. There seems to us to be no doubt that Glasgow was under a legal obligation to pay Carpenter the $12,499.76 which was paid him in each of the taxable years 1954, 1955, and 1956. We conclude, contrary to the contention of respondent, that the contract between Glasgow and Carpenter, and the payments made thereunder, were not part of the price for Wilson’s purchase of Carpenter’s stock in Glasgow. It follows, then, that the respondent erred in determining that the payments to Carpenter were made for Wilson’s benefit, includible in his income for the years 1955 and 1956 as constructive dividends for those years, and we so hold. Respondent contends that, regardless of whether the payments were made as part of the purchase price of Carpenter’s stock, Glasgow has failed to show that the payments were ordinary and necessary business expenses of Glasgow. It is clear that Carpenter performed no services of any kind in either 1954,1955, or 1956. While the record shows to our satisfaction that Carpenter was not adequately compensated for the services he rendered in 1950, the amount of additional compensation for past services, referred to in the corporate minutes, is not specified. Certainly, Carpenter was paid during 1952 and 1953 amounts substantially in excess of the value of the services he rendered in those years. In our opinion the overpayments made to him in those years adequately compensated him for his underpayment in 1950. In order for the payments to be deductible to Glasgow under section 162(a) (1), 1954 Code, in 1954,1955, and 1956, they must have been made for “personal services actually rendered” either in the taxable years or prior years. In view of our findings of fact that the payments of $12,499.76 to Carpenter by Glasgow in 1952 and 1953 overpaid him for services actually rendered in those years and amply paid him for services rendered in 1950, when he was underpaid, we do not think that Glasgow is entitled to a deduction of the $12,499.76 paid to him in 1954,1955, and 1956. The testimony is that he rendered no personal service to Glasgow in those years as an officer or employee of Glasgow. We sustain the Commissioner on this issue. The next issue presented is the determination of Glasgow’s basis in the Conant land, issue 3. Both parties are agreed that issue 4, involving respondent’s disallowance of interest deductions claimed by Glasgow in 1956 and 1957, is controlled by resolution of this issue. The related issue in the case of the individual petitioners is issue 5, whether Wilson received from Glasgow a distribution taxable as a dividend upon the payment to him of $25,000 in 1955. The record does not show that any such payment was made in 1956, nor does respondent’s statutory notice put any such payment in issue in that year. For 1955, respondent has added to the net income reported by petitioners, the Wilsons, on their return, a dividend of $25,000. He explains this adjustment in his deficiency notice, as follows: (2) The Conant land transaction reported as a sale is not recognized as an arms length or bona fide transaction. Therefore the payment of $26,000.00 received from the Glasgow Village Development Corporation, in connection with said transaction, during the year 1955, represents a distribution of income taxable as a dividend. Glasgow contends that the purchase of the Conant land was a bona fide purchase of property for adequate consideration from parties not obligated to sell the property at any lesser price. Respondent, on the other hand, contends, first, that Wilson was acting for Glasgow when he purchased the property in 1952; second, that the sale was not bona fide; and third, that Wilson and those of the Glasgow heirs who had purchased the property were under an obligation to sell the property to Glasgow for cost, or $1,000 per acre, whichever was greater. We do not agree with respondent that Wilson acted for Glasgow when he and some of the heirs purchased the property in 1952. While, of course, Wilson, as president of Glasgow, was under a duty not to divert business opportunities from the corporation, the record is clear that Glasgow at that time was financially unable to take advantage of the opportunity. In such circumstances, we think the corporate officer may avail himself of an opportunity which would otherwise be the corporation’s. We know of no law to the contrary. The record shows that Wilson did in fact deal for himself and some of the Glasgow heirs. The purchase money was provided in part by those heirs and in much more major part by Wilson. Subsequent to acquiring the property, Wilson agreed to, and did, pay expenses in connection with the property, including taxes for several years, and tried unsuccessfully to derive income from renting the property for farming purposes. We conclude, therefore, that Wilson acted for himself and some of the Glasgow heirs, and not for Glasgow, in the purchase of the Conant land. Although respondent, by his determination, has questioned the value at which the property was transferred to Glasgow in 1955, it seems clear from the record that the property had a fair market value of as much as $250,000 at that time. It was appraised at transfer by two reputable real estate experts as having approximately that value; a financial institution lent $150,000 against the property at that time; and the records of the financial institution show an appraised value substantially in excess of $250,000. So far as the record shows the price of $250,000 was a fair price at the time it was purchased in 1955 by Glasgow from Wilson and the Glasgow heirs. Therefore, we think respondent erred when in his deficiency notice for 1956 and 1957 he determined that— The cost of the Conant land to the corporation is determined to be the cost to C. T. Wilson, who is held to have acted for the taxpayer corporation in the purchase of said land cost $61,042.34— * * * Respondent fixed the basis of the lots which Glasgow sold from the Conant land in 1956 and 1957 by using a purchase price of $61,042.34, instead of $250,000, the price which Glasgow paid and agreed to pay for the land in 1955. Respondent contends, however, in the alternative that if he was in error in determining that the cost of the Conant land to Glasgow was $61,042.34, nevertheless Glasgow’s basis should not exceed $99,600 because of a contract which the Glasgow heirs entered into on April 27, 1950, with M. H. Carpenter, Inc., and in which, on the same day, Carpenter and Wilson concurred and agreed to be bound. We have given, careful consideration to this contract and all the facts surrounding it and we do not believe that it has any bearing upon Glasgow’s purchase in 1955 of the Conant land from Wilson and the Glasgow heirs, and we so hold. The testimony convinces us that this contract of 1950 was entered into for the protection of the Glasgow heirs, owners, and not for the benefit of the development corporation. The purpose of section 22 of the contract, which section is included in our Findings of Fact and is the one upon which respondent relies for his contention, was to insure the Glasgow heirs that they would receive at least $1,000 per acre for any land which they might acquire within the distance prescribed, for the development. That is the interpretation that we give to the contract, considering all the evidence in the record. We sustain petitioners on this issue 3. Inasmuch as we have sustained petitioners on issue 3, and have held that the $250,000 purchase price which Glasgow paid for the Conant land shall be recognized as its basis for apportioning the cost of the purchase price to the various lots which existed when the Conant land was subdivided into lots, it naturally follows that issue 4, as to interest paid by Glasgow in 1956 and 1957, shall be decided in Glasgow’s favor. Both parties agree that this issue shall be determined in accordance with the way we determine the purchase price of the Conant land. It also follows that issue 5, which contests the determination made by the Commissioner that the $25,000 part payment to Wilson in 1955 was the distribution of a dividend, must be decided in petitioners’ favor. We hold that the $25,000 payment to Wilson in 1955 was not the distribution of a dividend but was payment of part of the purchase price for the Conant land. Wilson so treated it in his 1955 return and paid taxes in accordance therewith. It seems to us that his treatment was correct. The final issue, issue 6, is whether Glasgow is entitled to deduct in 1956 a loss on the Balias property. Respondent has disallowed the deduction on the ground that Glasgow has failed to prove that the loss was suffered by Glasgow. It is axiomatic that the loss, deduction of which is sought, must be sustained by the taxpayer who seeks to deduct it. New Colonial Co. v. Helvering, 292 U.S. 435 (1934). Here, the only evidence of a connection between Glasgow and the Balias property is testimony that book entries were made transferring the property to Glasgow. No showing is made of any consideration which would support the transfer, nor is transfer of title to the property shown. In short, the only evidence to overcome the presumed correctness of respondent’s determination in this regard is oral testimony that some book entries were made. What the book entries were, we are not told; what economic realities they reflected, we are not shown. The presence of entries upon the books of a taxpayer are not conclusive of the occurrence of the transaction which they purport to reflect. Cf. Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918). We hold, therefore, that Glasgow has failed to prove that respondent irred in disallowing the claimed loss on the Balias property. Decisions will Toe entered imder Bule 50. SEC. 162. TRADE OR BUSINESS EXPENSES. ■(a) In Gbnekau. — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including— (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; Conflicting testimony on Row muck Carpenter paid Wilson for stock in Glasgow varies between $3,657.84 and $6,724.08.