MOHAMMED MEHDI SAGHAFI AND FOUROUGH SAGHAFI, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Saghafi v. Commissioner
Docket Nos. 5417-91, 8004-92, 8005-92
United States Tax Court
T.C. Memo 1994-238; 1994 Tax Ct. Memo LEXIS 237; 67 T.C.M. (CCH) 3016; May 26, 1994, Filed *237 For petitioners: Brian G. Ruschel. For respondent: Dawn Marie Krause. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, additions to, and accuracy-related penalties on petitioners' Federal income tax: Additions to Tax
Section Section Section Petitioner
Year
Deficiency
6653(a)(1)(A) [2]
6653(a)(1)(B) 6661(a) Mohammed Mehdi
1987
$ 26,532
$ 1,327 *
$ 6,633
Saghafi
and Fourough
Saghafi
(the Saghafis)
* 50 percent of the interest due on the portion of the underpayment
attributable to negligence. Respondent determined that the entire
underpayment was attributable to negligence.
Accuracy- Related Additions to Tax
Penalty Section Section Section Petitioner
Year
Deficiency
6653(a)(1)
6661(a) 6662(a) Mohammed Mehdi
1988
$ 20,599
$ 1,030
$ 5,150
$ --
Saghafi
1989
326
-- -- 65
(Dr. Saghafi)
*238 Accuracy-Related
Penalty Year
Section Petitioner
Ended Deficiency
6662(a) Mehdi Saghafi, M.D., Inc.
12/31/89
$ 4,586
$ 917
(Saghafi, Inc.)
The issues remaining for decision are: (1) Is a purported sale during 1987 of an airplane by Dr. Saghafi to Saghafi, Inc. to be respected for Federal income tax purposes? We hold that it is not. (2) In the alternative, is Dr. Saghafi entitled to deduct for the years at issue depreciation relating to the airplane? We hold that he is not. (3) Is Saghafi, Inc. entitled to a net operating loss deduction for 1989? We hold that it is not. (4) Did the Saghafis fail to include in their income for 1987 certain income from Saghafi, Inc.? We hold that they did to the extent stated herein. (5) Did Dr. Saghafi overstate his gross income for 1988? We hold that he did to the extent stated herein. (6) Are the Saghafis liable for 1987 for the additions to tax for negligence under section 6653(a)(1)(A) and (B)? We hold that they are. (7) Are the Saghafis liable for 1987 for the addition to tax for a substantial understatement of income tax under section 6661(a)? We hold that they are. (8) Is Saghafi, Inc. *239 liable for 1989 for the accuracy-related penalty under section 6662(a)? We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [3]
*240 At the time the petitions for docket Nos. 5417-91 and 8005-92 were filed, Dr. Saghafi resided in Seven Hills, Ohio. At the time the petition for docket No. 5417-91 was filed, Fourough Saghafi (Ms. Saghafi) resided in Cuyahoga County, Ohio. [4] At the time the petition in docket No. 8004-92 was filed, Saghafi, Inc. was a corporation having its business address in Parma, Ohio. Dr. and Ms. Saghafi filed a joint Federal income tax return for the year 1987. Dr. Saghafi filed separately, as head of a household, for the years 1988 and 1989. At all times pertinent to these cases, Dr. Saghafi was the sole shareholder and president of Saghafi, Inc., a professional corporation providing medical services that was incorporated on July 1, 1973. From its incorporation through January 31, 1988, Saghafi, Inc. filed its Federal income tax returns on a fiscal year basis ending on January 31. Thereafter, Saghafi, Inc. began filing its Federal income tax returns on a calendar *241 year basis and submitted the first such return for the short period February 1, 1988, through December 31, 1988. For each taxable year from its inception, Saghafi, Inc. maintained its books and records and filed its Federal income tax returns using the cash receipts and disbursements method of accounting. All petitioners relied on accountants to prepare their respective tax returns; Saghafi, Inc. also relied on accountants to keep its books and records (books and records). In maintaining those books and records, Saghafi, Inc. used double-entry bookkeeping. As part of its books and records, Saghafi, Inc. established certain accounts, including one that was denominated as an officer's loan account (officer's loan account) and one that was denominated as an officer's advance account (officer's advance account). [5] Saghafi, Inc. recorded in those two accounts amounts that it treated as loans and advances, respectively, to Dr. Saghafi. *242 Between January 1 and December 31, 1987, Dr. Saghafi received cash payments from Saghafi, Inc. in the total amount of $ 119,576.73. Saghafi, Inc. also paid during 1987 the following taxes on behalf of Dr. Saghafi: State
$  5,455.00
Local
4,000.00
Social Security
3,131.70
Total
$ 12,586.70
Consequently, during 1987, Saghafi, Inc. paid to or on behalf of Dr. Saghafi a total of $ 132,163.43. The original Federal income tax return filed by the Saghafis for 1987 (original 1987 return) reflected on line 7 as wages, salaries, and tips the amount of $ 152,000 [6] and on line 22 as total income the amount of $ 162,525. Brian Ruschel (Mr. Ruschel), counsel for all petitioners herein, was listed in the original 1987 return as the return preparer. The Saghafis subsequently filed two amended returns (amended 1987 returns or 1987 refund claims), in which they reduced their gross income by $ 50,000 *243 to $ 112,525 and sought a refund. [7] The amended 1987 returns were received by the Internal Revenue Service (the Service) on February 28, 1989, and August 3, 1989, respectively. The Service denied the 1987 refund claims. In neither their original 1987 return nor their amended 1987 returns did the Saghafis reflect any gains or losses arising from Dr. Saghafi's purported sale to Saghafi, Inc. of a six-seat Cessna airplane (the airplane) that he owned. [8] Dr. Saghafi had purchased the airplane for $ 104,154 on September 17, 1978. In order to make that purchase, Dr. Saghafi borrowed money from Society National Bank (Society). The total payments to Society in repayment of that loan were $ 72,361. The final payment was made in September 1986.
*244 In the notice of deficiency, dated February 28, 1991, relating to the Saghafis' original 1987 return (1987 notice), respondent increased the wages from Saghafi, Inc. that were reported by the Saghafis in the amount of $ 68,913. Exhibit A of the 1987 notice reflected the following computation relating to that increase: Wage amount determined for Dr. Saghafi
by Saghafi, Inc. as of January 31, 1987
$ 104,000.00
Cash payments from Saghafi, Inc. for the period
February 1, 1987, through December 31, 1987
102,326.00
State and local income and Social Security taxes
paid by Saghafi, Inc. on behalf of Dr. Saghafi * 12,587.00
Total wages received for the taxable year 1987
$ 218,913.00
Wages paid to Dr. Saghafi as reported in return ** -150,000.00
Increase to wages
$  68,913.00
* This amount was rounded to the nearest dollar.
** The Saghafis reported in their original 1987 return total
wages of $ 152,000, consisting of $ 150,000 in wages reported by
Dr. Saghafi and $ 2,000 in wages reported by Ms. Saghafi.
In the trial memorandum she submitted in these cases, respondent asserted an increase in the deficiency and additions to tax for 1987 over those determined *245 in the 1987 notice. That increase is based on respondent's claim that Dr. Saghafi understated his income from Saghafi, Inc. for 1987 by the amount of $ 127,160.27, and not by the amount of $ 68,913.00 reflected in the 1987 notice. At trial, respondent again advanced her claim of an increased deficiency and additions to tax for 1987 to reflect the increased amount of unreported income she alleges. Respondent provided the following calculation in her trial memorandum in support of her claimed $ 127,160.27 increase in Dr. Saghafi's income for 1987: Cash payments from Saghafi, Inc.
$ 119,576.73
from January 1, 1987, to December 31, 1987
State and local income and Social Security taxes
paid by Saghafi, Inc. on behalf of Dr. Saghafi
12,586.70
Balance reflected in officer's loan
account as of January 1, 1987 $ 33,887.40
Less 1987 principal payments - 9,111.97
24,775.43
Balance reflected in officer's advance
account on January 1, 1987
120,221.41
Total
$ 277,160.27
Less amount reported in return as
wages to Dr. Saghafi
- 150,000.00
Understatement of income
$ 127,160.27
In her trial memorandum, respondent explained that the $ 17,250.73 difference between (1) the *246 cash payments of $ 119,576.73 reflected in her revised calculation of the $ 127,160.27 increase in the Saghafis' income for 1987 and (2) the cash payments of $ 102,326.00 reflected in the 1987 notice is due to her not having taken into account when she prepared the 1987 notice the following cash payments from Saghafi, Inc. to Dr. Saghafi that were made on the dates indicated:
Date
Check Number
Amount
01/02/87
2472
$ 11,000.00
01/14/87
2490
6,000.00
02/16/87
81.67
12/06/87
169.06
Total
$ 17,250.73
The above cash payments totaling $ 17,000 that respondent determined were made to Dr. Saghafi in January 1987 were reflected in the officer's advance account. The other differences between the computation in the 1987 notice and the revised computation underlying respondent's claim of an increased deficiency and additions to tax relate to her contentions that (1) Dr. Saghafi was discharged during 1987 of the $ 24,775.43 balance reflected in the officer's loan account as of December 31, 1987, after that account was reduced by Dr. Saghafi's payment during 1987 of $ 9,111.97 in principal; [9] and (2) Dr. Saghafi's income for 1987 should include the entire *247 $ 120,221.41 balance reflected in the officer's advance account as of January 1, 1987, [10] and not the $ 104,000.00 amount which Saghafi, Inc. determined was the wage amount for Dr. Saghafi for 1987. At all times pertinent to these cases, Dr. Saghafi, as president of Saghafi, Inc., determined the salaries for Ms. Saghafi and himself. Since its inception through at least the taxable year of Saghafi, Inc. ended January 31, 1987, the typical practice followed by Saghafi, Inc. in setting compensation and making advances to Dr. and Ms. Saghafi was as follows. Saghafi, Inc. made distributions during the year to Dr. and Ms. Saghafi that were reflected in the officer's advance account. Near the close of the taxable year of Saghafi, Inc., Dr. Saghafi, as president of Saghafi, Inc., would determine what portion of the amounts paid *248 to or on behalf of Ms. Saghafi and himself during the 12 months ending with that year was to be considered compensation to Ms. Saghafi and himself (declared wage amount) and what portion was to remain as part of the balance reflected in the officer's advance account. Saghafi, Inc. withheld taxes on the declared wage amount, reduced that amount by the withheld taxes, and reflected the remaining net amount of the declared wage amount as a credit to the officer's advance account as of the last day of the then current year of Saghafi, Inc. On January 31, 1987, Saghafi, Inc. declared a total wage amount of $ 106,000, consisting of $ 104,000 for Dr. Saghafi and $ 2,000 for Ms. Saghafi. After Saghafi, Inc. withheld Social Security and State and local taxes of $ 6,454.70 on that $ 106,000.00 declared wage amount and reduced that amount by those withheld taxes, the balance of $ 99,545.30 was reflected as of January 31, 1987, as a credit to the officer's advance account. Saghafi, Inc. deducted for the taxable years indicated the following declared wage amounts determined for Dr. Saghafi and Ms. Saghafi: Year Ended
Wage Amount 01/31/85
$  62,900
01/31/86
62,000
01/31/87
106,000
01/31/88
117,000
12/31/88
65,722
12/31/89
66,000
*249 The books and records of Saghafi, Inc. relating to the officer's advance account reflected the following balances in that account as of the following dates: Date Balance *
01/01/84
$  90,163.41
01/31/84
23,192.61
01/01/85
84,668.58
01/31/85
39,808.58
01/01/86
83,328.23
01/31/86
38,776.05
01/01/87
120,221.41
01/31/87
37,676.11
01/31/88
0    12/31/88
0    * The balances reflected as of Jan. 31, 1984, Jan. 31, 1985, Jan.
31, 1986, and Jan. 31, 1987, already reflected credits (i.e.,
reductions) relating to wage amounts declared as of each of those
dates.
On February 1, 1984, the officer's loan account reflected a balance of $ 0. As of January 1, 1987, the balance reflected in the officer's loan account was $ 33,887.40. During 1987, total payments made by Dr. Saghafi on the loan reflected in the officer's loan account were $ 12,537.84, consisting of total principal and interest payments of $ 9,111.97 and $ 3,425.87, respectively. The loan from Saghafi, Inc. to Dr. Saghafi reflected in the officer's loan account was discharged during 1987. During the period 1981 through 1983, Dr. Saghafi leased the airplane to Saghafi, Inc. for $ 18,000 per year. Although *250 the annual amount of $ 18,000 was deducted by Saghafi, Inc. in each of its tax returns for its taxable years ended January 31, 1982, January 31, 1983, and January 31, 1984, Dr. Saghafi did not report that or any other amount as rent for the lease of the airplane in his Federal income tax returns. Saghafi, Inc. did not deduct in its returns for any of its taxable years during the period February 1, 1984, through December 31, 1988, any amount as rent for its lease of the airplane. Saghafi, Inc. separately listed and deducted in its returns for the taxable years indicated the following amounts of expenses, not including depreciation, related to the airplane: [11]
Year Ended
Airplane Expenses 01/31/85
$ 24,932
01/31/86
10,376
01/31/87
10,839
01/31/88
0   12/31/88
0   12/31/89
0   *251 From February 1, 1981, through January 31, 1987, Saghafi, Inc. paid $ 67,805.53 for improvements to the airplane. Those improvements were depreciated by Saghafi, Inc. in its tax returns and in its books and records. In an agreement entitled "Installment Contract for Sale of Airplane", dated February 15, 1987, and executed by Dr. Saghafi on behalf of himself individually and as president of Saghafi, Inc. on behalf of that corporation (the installment contract), Dr. Saghafi purported to sell the airplane to Saghafi, Inc. for $ 85,000. No sales tax was paid on the alleged sale of the airplane. The $ 85,000 purchase price was "payable in installments to be determined during 1987 with a remainder note of $ 25,000 payable in five annual installments through 1992." Pursuant to the installment contract, Dr. Saghafi agreed to make delivery of the airplane on February 15, 1987, at the Portage County Airport. He further agreed that, at the time of payment by Saghafi, Inc. of the final installment of the purchase price, he would execute all forms necessary to transfer ownership of the airplane to Saghafi, Inc. in conformity with applicable requirements of the U.S. Department of Commerce. *252 The installment contract also provided that Dr. Saghafi was to retain title of the airplane as security until the full purchase price of the airplane had been paid by Saghafi, Inc. In a document dated February 15, 1987, and executed by Dr. Saghafi as president of Saghafi, Inc. on behalf of that corporation (the installment note), Saghafi, Inc. promised to pay Dr. Saghafi in five annual installments $ 25,000 plus interest on that amount at a rate of seven percent. The installment note provided for the following payment schedule: Date of
Installment Payment
Principal Interest
Payment 02/15/88
$ 5,000
$ 1,750
$ 6,750
02/15/89
5,000
1,400
6,400
02/15/90
5,000
1,050
6,050
02/15/91
5,000
700
5,700
02/15/92
5,000
350
5,350
The installment note indicated that Saghafi, Inc. had the right to prepay its obligation to Dr. Saghafi in whole or in part at any time and without prepayment charge or penalty. In the event of any prepayment, the interest payment was to be recalculated based on the then outstanding principal amount. The books and records of Saghafi, Inc. for its fiscal year ended January 31, 1988, reflected the following journal entries and explanation: *253 AJE 2 Debit Credit
Plane
$ 85,000.00
Officer's advances
$ 36,027.41
Officer's loan
23,972.59
Note payable -- officer
25,000.00
Record airplane sale not picked up on
cash disbursements/cash receipts postings
Prior to the foregoing journal entries, as of January 31, 1988, the balance reflected in the officer's loan account was $ 23,972.59, and the balance reflected in the officer's advance account was $ 47,554.20. After additional journal entries for the year ended January 31, 1988, the balances reflected in both the officer's loan account and the officer's advance account were $ 0. In its returns for each of its taxable years ended January 31, 1988, December 31, 1988, and December 31, 1989, and in its books and records for those years, Saghafi, Inc. claimed a depreciation deduction relating to its purported purchase of the airplane in the amount of $ 12,143. Saghafi, Inc. also claimed in its 1989 return a net operating loss deduction in the amount of $ 5,605. Saghafi, Inc. calculated this claimed loss deduction principally on the basis of the carryover of losses and depreciation adjustments it claimed for its taxable years ended January 31, *254 1983, January 31, 1984, January 31, 1985, January 31, 1986, January 31, 1987, and January 31, 1988. Mr. Ruschel was listed in the 1989 return filed by Saghafi, Inc. as the return preparer. In the notice of deficiency issued to Saghafi, Inc. for 1989 on March 27, 1992 (1989 notice), respondent disallowed both the depreciation deduction attributable to the purported purchase of the airplane by Saghafi, Inc. and the net operating loss deduction that were claimed by Saghafi, Inc. in its 1989 return. [12]
Between January 1 and December 31, 1988, Dr. Saghafi received cash payments from Saghafi, Inc. in the total amount of $ 104,036.64, of which $ 16,800.00 was paid in January 1988. During 1988, Saghafi, Inc. paid taxes on behalf of Dr. Saghafi in the amount of $ 1,785.36. Consequently, during that year, Saghafi, Inc. paid to or on behalf of Dr. Saghafi a total of $ 105,822. The original Federal income tax return filed by *255 Dr. Saghafi for 1988 (original 1988 return) showed on line 7 as wages, salaries, and tips the amount of $ 107,000, on line 8a as taxable interest income the amount of $ 3,239, of which $ 1,750 was shown as interest income from Saghafi, Inc., and on line 23 as total income the amount of $ 151,147. [13] Dr. Saghafi did not reflect any gain or loss in his original 1988 return arising from his purported sale of the airplane to Saghafi, Inc. Mr. Ruschel was listed in the original 1988 return as the return preparer. On October 30, 1991, the office of the District Director of the Service in Cleveland received an amended return for 1988 from Dr. Saghafi (amended 1988 return or 1988 refund claim) in which he claimed that he was entitled to a refund because his gross income was $ 101,147, and not $ 151,147 as originally reported. Dr. Saghafi's 1988 refund claim was received by the *256 Cincinnati Service Center on November 18, 1991. Dr. Saghafi did not reflect any gain or loss in the 1988 refund claim arising from his purported sale of the airplane to Saghafi, Inc. He filed the 1988 amended return "as a protective procedural measure to avoid possible statute of limitations problems." In that 1988 refund claim, Dr. Saghafi stated that the reduced income figure was related to the Service's moving "$ 50,000 of January, 1988 compensation income to 1987 taxable income * * * [without reducing] 1988 taxable income by the $ 50,000." In the notice of deficiency sent to Dr. Saghafi for 1988, dated March 27, 1992 (1988 notice), the Service denied the 1988 refund claim and increased Dr. Saghafi's reported wages for that year by $ 53,022. On brief, respondent concedes the determination in the 1988 notice increasing Dr. Saghafi's reported wages for 1988. Prior to the examination by the Service that resulted in the 1987, 1988, and 1989 notices in these cases, the Service audited the joint Federal income tax returns filed by the Saghafis for 1981, 1982, and 1983 and the corporate income tax returns filed by Saghafi, Inc. for its taxable years ended January 31, 1982, January *257 31, 1983, and January 31, 1984 (hereinafter referred to individually as the prior audit of the Saghafis or the prior audit of Saghafi, Inc. and collectively as the prior audits of the Saghafis and Saghafi, Inc.). The prior audit of the Saghafis focused on the includibility in Dr. Saghafi's income of certain advances and loans purportedly made to him by Saghafi, Inc. and on the deductibility by Dr. Saghafi of expenses related to his business and personal use of the airplane. The prior audit of Saghafi, Inc. focused on the deductibility by Saghafi, Inc. of certain advances and loans purportedly made by that corporation to Dr. Saghafi and the deductibility of certain operating and depreciation expenses claimed by Saghafi, Inc. relating to its rental of an airplane owned by Dr. Saghafi. As part of the resolution of the prior audits of the Saghafis and Saghafi, Inc., the parties agreed during early 1989 that $ 70,100 of the advances made by Saghafi, Inc. to Dr. Saghafi during the period 1981 through 1983 were not loans but were compensation for services that was includible in his income for those years. The effect of that resolution was to adjust Dr. Saghafi's income for the years *258 1981, 1982, and 1983 to reflect "the total amount of advances received, less the amounts reported by * * * [Dr. Saghafi] as income for the period." For purposes of calculating the tax due on the $ 70,100 of compensation received by Dr. Saghafi during the period 1981 through 1983, the Saghafis and the Service agreed that that amount was to be spread equally over a five-year period beginning with 1981; consequently, $ 14,020 of the total compensation adjustment for the years 1981 through 1983 was to be allocated to Dr. Saghafi for each of the years 1981 through 1985. It was further agreed by Dr. Saghafi and the Service that the $ 14,020 amount allocated to each of the years 1984 and 1985, years that were not under audit, would be discounted at a rate of 10 percent per year and those two discounted amounts (i.e., $ 12,618 for 1984 and $ 11,216 for 1985) would be added to the $ 14,020 amount allocated to 1983 to reflect the total adjustment for that year. As a result, Dr. Saghafi was required to pay tax on a total of $ 65,894 in compensation income for the years 1981, 1982, and 1983, allocated as follows: Year
Additional Compensation 1981
$ 14,020
1982
14,020
1983
37,854
*259 Saghafi, Inc. made no adjustments to the officer's advance account or to any of its other books and records to reflect the foregoing resolution of the prior audits of the Saghafis and Saghafi, Inc., viz., that $ 70,100 of the advances made by Saghafi, Inc. to the Saghafis during the years 1981 through 1983, which had been reflected in the officer's advance account but which had not been reported by them as income for those years, was includible in their income for those years. Consequently, as of January 1, 1987, and January 31, 1987, the balances reflected in the officer's advance account (prior to any credits or debits to that account as of those dates) were overstated in the amount of $ 70,100. After reducing the amount reflected in the officer's advance account as of January 1, 1987, and January 31, 1987, by such $ 70,100.00 overstatement, the balance in that account as of those two dates is $ 50,121.41 and $ 67,121.41, respectively. Based on the airplane usage logbook supplied to the Service during the prior audits of the Saghafis and Saghafi, Inc., Dr. Saghafi and the Service agreed for purposes of resolving those prior audits that Dr. Saghafi's personal use of the airplane, *260 as a percentage of the airplane's total use for each of the years 1981 through 1983, was 47.95 percent for 1981, 49.57 percent for 1982, and 52.21 percent for 1983. Consequently, as part of the resolution of the prior audit of the Saghafis, Dr. Saghafi was allowed depreciation deductions for the airplane for each of the years 1981, 1982, and 1983 in the amounts of $ 5,323, $ 5,157 and $ 4,888, respectively. OPINION I. Burden of Proof
Petitioners have the burden of showing that the determinations of respondent in the 1987, 1988, and 1989 notices are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Hagaman v. Commissioner, 958 F.2d 684, 690 (6th Cir. 1992), affg. and remanding T.C. Memo. 1987-549. Respondent has the burden of proof in respect of the increases in the deficiency and additions to tax for 1987 that she raised in her trial memorandum and at trial. Rule 142(a). II. Purported Sale of the Airplane
A. Tax Treatment of the Purported Sale
Petitioners argue that the purported sale during 1987 of the airplane by Dr. Saghafi to Saghafi, Inc. must *261 be respected for Federal income tax purposes as having occurred in either 1987 or 1988. [14] Petitioners' evidence concerning this issue focuses only on a purported sale of the airplane during 1987. It consists of the installment contract between Dr. Saghafi and Saghafi, Inc., the installment note from Saghafi, Inc. to Dr. Saghafi, both dated February 15, 1987, and the books and records and Federal income tax returns of Saghafi, Inc. for its taxable years ended January 31, 1988, December 31, 1988, and December 31, 1989, which contain journal entries, asset balances, and depreciation deductions relating to a purported transfer during 1987 of the airplane to Saghafi, Inc. Petitioners also assert, without citing any authority, that "the plane sale contract is binding under Ohio law and the general law of contracts." *262 Respondent argues that the purported airplane sale should not be respected for Federal income tax purposes. She points out that (1) no evidence was produced that title to the airplane was transferred to Saghafi, Inc., (2) no evidence was produced of the ownership of the airplane by Saghafi, Inc., such as its payment of airplane insurance, (3) sales tax was never paid on the purported transfer, (4) the Saghafis did not reflect Dr. Saghafi's purported sale of the airplane in the original or amended 1987 returns, and (5) the accounting journal entries reflecting the purported sale (viz., entry AJE 2) were not made until January 31, 1988, many months after the purported sale date of February 15, 1987. Respondent further contends that the airplane sale was motivated solely by a desire on the part of Dr. Saghafi to minimize his Federal income taxes. Thus, respondent asserts that: because of a change in the Internal Revenue Code, * * * [Saghafi, Inc.] was forced to change its reporting period from a fiscal year ending on January 31, to a calendar year ending on December 31. [15] This effectively terminated petitioner's income shifting scheme. As there was no longer a tax advantage *263 to the officer's advance account, petitioner declared the balance in the account to be wages in 1987. The alleged airplane sale was nothing more than an attempt to reduce petitioner's taxable income for a year in which a large amount of wages were [sic] included in gross income.
The economic substance of a transaction purporting to be a sale, and not its form, governs for Federal tax purposes. E.g., Frank Lyon Co. v. United States, 435 U.S. 561, 572-573 (1978); Owens v. Commissioner, 568 F.2d 1233, 1237 (6th Cir. 1977), affg. in part and revg. in part 64 T.C. 1 (1975); Hulter v. Commissioner, 91 T.C. 371, 387 (1988). *264 A transaction must have a purpose and a substance apart from anticipated tax consequences in order to be recognized for tax purposes. E.g., Knetsch v. United States, 364 U.S. 361, 365-370 (1960); Hulter v. Commissioner, supra at 388. In order to constitute a sale or transfer of ownership for Federal tax purposes, the benefits and burdens of ownership must pass from the seller to the buyer. Whether a sale has occurred is a question of fact. Owens v. Commissioner, supra at 1237-1238 . That question must be resolved by ascertaining the intention of the parties as evidenced by the written agreements and by all of the relevant facts and circumstances. Reinberg v. Commissioner, 90 T.C. 116, 132 (1988); Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237 (1981); see Durkin v. Commissioner, 87 T.C. 1329, 1367 (1986), affd. 872 F.2d 1271 (7th Cir. 1989). Some of the factors that have been considered in making this determination are: (1) Whether legal title *265 passes, Oesterreich v. Commissioner, 226 F.2d 798, 802 (9th Cir. 1955), revg. a Memorandum Opinion of this Court dated Mar. 16, 1953; Commissioner v. Segall, 114 F.2d 706, 709 (6th Cir. 1940), revg. 38 B.T.A. 43 (1938); (2) how the parties treat the transaction, Grodt & McKay Realty, Inc. v. Commissioner, supra at 1238; (3) whether an equity is acquired in the property, Haggard v. Commissioner, 241 F.2d 288, 289 (9th Cir. 1956), affg. 24 T.C. 1124 (1955); (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments, Wiseman v. Scruggs, 281 F.2d 900, 902 (10th Cir. 1960); (5) whether the right of possession is vested in the purchaser, Commissioner v. Segall, supra at 709; (6) which party pays the property taxes, Harmston v. Commissioner, 61 T.C. 216, 229 (1973), affd. per curiam 528 F.2d 55 (9th Cir. 1976); *266 (7) which party bears the risk of loss or damage to the property, id. at 230; (8) which party receives the profits from the operation and sale of the property, id. at 229-230; and (9) whether the sales price of an asset reflects its fair market value at the time of its alleged sale, Estate of Franklin v. Commissioner, 544 F.2d 1045, 1048 (9th Cir. 1976), affg. on different grounds 64 T.C. 752 (1975); Hulter v. Commissioner, supra at 389. Although a shareholder's control of a corporation will not, by itself, allow the form of a transaction between the shareholder and the corporation to be disregarded, sales between related parties are closely scrutinized. See Sun Properties, Inc. v. United States, 220 F.2d 171, 172-174 (5th Cir. 1955). In addition, although the installment contract characterized the purported transfer of the airplane as a sale, that designation is not conclusive. Frank Lyon Co. v. United States, supra at 573-574; Gregory v. Helvering, 293 U.S. 465, 469-470 (1935). *267 Nor are entries made in the books and records of Saghafi, Inc. that treat the purported transfer of the airplane as a sale controlling. Woodworth v. Commissioner, 218 F.2d 719, 723 (6th Cir. 1955), affg. a Memorandum Opinion of this Court dated Oct. 30, 1953; Glasgow Village Development Corp. v. Commissioner, 36 T.C. 691, 703 (1961). In the instant case, no nontax business purpose was given for the purported sale. In addition, petitioners offered no evidence that title to the airplane was transferred to Saghafi, Inc. or that, in accordance with the language of the installment contract, Dr. Saghafi executed all forms needed to transfer ownership of the airplane in conformity with the applicable requirements of the U.S. Department of Commerce. No documentation was presented that Dr. Saghafi delivered the airplane to Saghafi, Inc. on February 15, 1987, as required by the installment contract. No evidence was introduced that Saghafi, Inc. paid any expenses, such as insurance or taxes, relating to the operation of the airplane after February 15, 1987. No evidence was presented that after that date Saghafi, Inc. was to *268 bear the risk of loss with respect to the airplane or that the corporation sought to cover any risk of loss that it bore through insurance. Other than the presentation of Saghafi Inc.'s books and records reflecting journal entries tied to the purported transfer of the airplane by Dr. Saghafi to Saghafi, Inc. and to the recording of interest and principal amounts under the installment note, no canceled checks or other corroborating evidence was offered to substantiate that Saghafi, Inc. in fact complied with its payment obligations under the installment note. No evidence was introduced to establish that the $ 85,000 sales price for the airplane stated in the installment contract represented its fair market value on the date of its purported sale (viz., February 15, 1987). In fact, no evidence appears in the record that any attempt was made to secure an independent and unbiased appraisal of the airplane's fair market value prior to its purported sale. Instead, petitioners assert on brief: "Dr. Saghafi set the price and was most familiar with the value." This assumes a fact not in the record, i.e., that the sales price stated in the installment contract represented the fair market *269 value of the airplane. Dr. Saghafi did not even testify that, in his opinion, that was the case. It is also significant that it was entirely within the power of Dr. Saghafi to fix the price at whatever amount best suited his purpose. On the instant record, we find that petitioners have not met their burden of establishing that Dr. Saghafi sold his airplane to Saghafi, Inc. during 1987 or any other year. [16] Accordingly, we hold that Dr. Saghafi's purported sale of the airplane will not be respected for Federal income tax purposes as having occurred during either 1987 or 1988. [17]
*270 B. Dr. Saghafi's Alternative Claim For Depreciation Deductions for the Airplane
At trial, petitioners orally moved to amend their petition to claim that, in the event the Court were to conclude that the purported airplane sale is not to be respected for Federal income tax purposes, Dr. Saghafi would be entitled to depreciation deductions for the airplane for 1987, 1988, and 1989. There being no objection by respondent, we granted that motion. Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of (1) property used in a trade or business, or (2) property held for the production of income. If depreciable property is used for both business and personal purposes, an allocation between business and personal use of the property must be made. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973). Petitioners present no argument on brief regarding their alternative claim that Dr. Saghafi is entitled to depreciation deductions for the airplane for 1987, 1988, and 1989. However, with respect to whether Dr. Saghafi used the airplane in a trade or business, they assert on brief that Dr. *271 Saghafi could not claim depreciation deductions for the airplane from February 1, 1984, to February 15, 1987, since the airplane "was not used in Dr. Saghafi's personal (as opposed to Saghafi, Inc.'s) trade or business * * * [during that period] because he did not have a personal trade or business. He was a full-time employee of Saghafi, Inc." It appears that petitioners are contending that Dr. Saghafi provided medical services and used the airplane in providing those services as an employee of Saghafi, Inc. With respect to whether Dr. Saghafi used the airplane for the production of income, petitioners assert on brief that from February 1, 1984, to February 15, 1987, the airplane was not used for the production of income because Dr. Saghafi did not receive any rent for the airplane. Petitioners presented no evidence to suggest that the facts extant during the years at issue regarding Dr. Saghafi's position as an employee of Saghafi, Inc., his use of the airplane, and the absence of any rent for the airplane are different from the facts they assert were extant from February 1, 1984, to February 15, 1987, regarding those matters. Indeed, the record supports a contrary conclusion. *272 For example, Dr. Saghafi testified that when he used the airplane for certain medical-related purposes during the years at issue, that use generated income for Saghafi, Inc. Consequently, on the present record, we find that Dr. Saghafi has not proven that, during the years at issue, he used the airplane in a trade or business separate and apart from the business of Saghafi, Inc., his employer, or held it for the production of income within the meaning of section 167(a). Dr. Saghafi does not argue that, subject to the two-percent floor on miscellaneous itemized deductions under section 67(a), he would be entitled to depreciation deductions for the airplane for 1987, 1988, and 1989 as unreimbursed employee business expenses. [18] We therefore do not address this possibility. *273 Even assuming arguendo that Dr. Saghafi had established that he used the airplane during the years at issue in a trade or business separate from that of Saghafi, Inc., in the trade or business of being an employee of Saghafi, Inc., or held it for the production of income, he has not established the percentage of his business, as opposed to personal, use of the airplane. In this regard, it was agreed in connection with settling the prior audits of the Saghafis and Saghafi, Inc. that Dr. Saghafi's personal use of the airplane was around 50 percent of the airplane's total usage. Dr. Saghafi presented no evidence that his use of the airplane during 1987, 1988, and 1989 was related solely to the airplane's business use. Nor does the record in these cases contain sufficient evidence for 1987, 1988, and 1989 by which we could estimate Dr. Saghafi's business use of the airplane for those years. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). On the present record, we reject Dr. Saghafi's alternative claim for depreciation deductions for the airplane for 1987, 1988, and 1989. C. Claimed 1989 Net Operating Loss Deduction by Saghafi, Inc.
Respondent *274 disallowed a net operating loss deduction claimed by Saghafi, Inc. for 1989 in the amount of $ 5,605 arising principally from the carryover of losses and depreciation adjustments it claimed for its taxable years ended January 31, 1983, January 31, 1984, January 31, 1985, January 31, 1986, January 31, 1987, and January 31, 1988. [19] In their reply brief, petitioners argue that the reason for respondent's disallowance of that deduction was "respondent's attempt to disallow * * * [Saghafi, Inc.'s] depreciation deduction for the airplane for 1987 and 1988 without examining the 1987 and 1988 corporation returns." At trial, petitioners orally moved to amend their petition to assert that any increased wage income to *275 Dr. Saghafi for 1987 or 1988 is an increased wage expense and therefore an additional deduction for Saghafi, Inc. for each such year and that such an additional deduction could result in a net operating loss carryforward for Saghafi, Inc. to its taxable year ended December 31, 1989. There being no objection by respondent, we granted the motion. We have found that the purported sale of the airplane during 1987 or 1988 is not to be respected for tax purposes. Consequently, Saghafi, Inc. is not entitled to depreciation deductions relating to the airplane's purported purchase for any of its taxable years ended January 31, 1988, December 31, 1988, or December 31, 1989. Accordingly, any such depreciation deductions claimed by Saghafi, Inc. for those first two taxable years could not properly be reflected in any net operating loss carryforwards to its taxable year ended December 31, 1989. The record contains no evidence that substantiates Saghafi, Inc.'s entitlement to a net operating loss deduction for 1989 in the amount of $ 5,605 or any other amount. While the record does contain the Federal income tax returns filed by Saghafi, Inc. for its taxable years throughout the period February *276 1, 1981, through December 31, 1989, it appears that not all of those returns were audited by the Service. In fact, Saghafi, Inc. concedes in petitioners' reply brief that the Service did not examine its "1987 and 1988 corporation returns." Those tax returns are merely statements of Saghafi, Inc.'s claim and do not establish the truth of the matters set forth therein. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). On the present record, Saghafi, Inc. has not established its entitlement to a net operating loss deduction for 1989. III. Income of the Saghafis for 1987 Attributable to Saghafi, Inc.
Respondent in her trial memorandum and at trial asserted an increase in the deficiency and additions to tax for the Saghafis for 1987. That claimed increase is attributable to a claimed increase in income of $ 58,247.27 over that determined in the 1987 notice. [20] Specifically, respondent asserts that Dr. Saghafi understated his income for 1987 in the amount of $ 127,160.27, and not the lower amount of $ 68,913.00 reflected in that notice. We conclude that respondent *277 has not met her burden of establishing an increased deficiency and additions to tax for 1987. Indeed, we find that Dr. Saghafi understated his income for 1987 in the amount of $ 57,060.27, an amount less than the $ 68,913.00 amount reflected in the 1987 notice. A. The Officer's Advance Account
Respondent contends that the $ 120,221.41 balance reflected in the officer's advance account as of January 1, 1987, is includible in Dr. Saghafi's income for 1987 "because petitioners declared these advances as income when * * * [Dr. Saghafi] reported $ 150,000 in wages for 1987." [21] In this regard, we note that respondent bears the burden of proving that Dr. Saghafi must include in his income for 1987 (1) the $ 16,221.41 difference between the $ 120,221.41 balance *278 reflected in the officer's advance account as of January 1, 1987, that respondent alleges contributes to increases in the deficiency and additions to tax for that year and (2) the $ 104,000.00 declared wage amount for Dr. Saghafi for 1987 that was determined by respondent in the 1987 notice to be includible in his income for that year. [22]
In arguing that the balance reflected in the officer's advance account *279 as of January 1, 1987, is includible in Dr. Saghafi's 1987 income, respondent asserts that the balance reflected in that account "was the result of monies advanced by * * * [Saghafi, Inc. to Dr. Saghafi] during prior years, but not included in petitioners' income." Respondent thus appears to agree with petitioners that the officer's advance account as of January 1, 1987, is an account in the books and records of Saghafi, Inc. as of that date that reflects loans made to Dr. Saghafi prior to that date. The principal point of disagreement with petitioners with respect to that account is whether the amount reflected therein is correct. Before turning to that point, we note that respondent accepts the amount reflected in the officer's advance account as of January 1, 1987, as loans made to Dr. Saghafi prior to that date, but does not accept as loans made to Dr. Saghafi the $ 17,000 amount debited to that account during January 1987 in accordance with the practice Saghafi, Inc. had followed for prior periods. [23] *281 Respondent alleges that that $ 17,000 amount as to which she has the burden of proof contributes to the increased deficiency and additions to tax that she asserts for 1987. *280 However, respondent offers no explanation for her inconsistent treatment regarding amounts debited to the officer's advance account during the taxable year of Saghafi, Inc. ended January 31, 1987. As a result, and bearing in mind that respondent has the burden of proof in respect of the $ 17,000 alleged increase in income, we shall treat the $ 17,000 debited to the officer's advance account in January 1987 in the same manner as the other debit amounts reflected in that account as of January 1, 1987, namely, as loans. [24]
We now address the parties' dispute regarding the amount reflected in the officer's advance account as of January 1, 1987. To resolve the issue as to what amount, if any, reflected in the officer's advance account must be included in the Saghafis' income for 1987, we also find it necessary to focus on the balance reflected in that account as of January 31, 1987. In this regard, we note that the resolution of the prior audits of Saghafi and Saghafi, Inc. did not occur until early 1989 and that therefore the results of that resolution could not have been reflected in the books and records of Saghafi, Inc. prior to that time. The Saghafis contend that the balance *282 reflected in the officer's advance account as of January 1, 1987, and January 31, 1987, is overstated by $ 70,100 because that account was never adjusted to reflect the settlement of the prior audits of the Saghafis and Saghafi, Inc. Under that settlement, the Saghafis agreed to include in their income for the years 1981 through 1983 a total of $ 70,100 in compensation that had been reflected in the officer's advance account as loans from Saghafi, Inc. to Dr. Saghafi. [25] Petitioners contend that, by including in Dr. Saghafi's income for 1987 the unadjusted balance reflected in the officer's advance account as of January 1, 1987, "respondent is trying to tax amounts twice." *283 Respondent has stipulated and thus agrees that Saghafi, Inc. made no adjustments to the officer's advance account or to any of its other books and records to reflect the audit adjustments agreed to as part of the prior audit of the Saghafis and Saghafi, Inc. for 1981 through 1983. Nonetheless, she contends that (1) any "double taxation" of income to the Saghafis would have occurred for 1984 when Saghafi, Inc. determined what portion of the amount reflected in the officer's advance account as of January 31, 1984, was the declared wage amount; (2) no legal theory exists "to support petitioners' claim that the officer's advance account was 'permanently reduced' as a result of the prior audit;" and (3) in any event, the settlement of the prior audits allowed Dr. Saghafi to discount part of the $ 70,100 amount that was reflected in the officer's advance account, with the result that he included in his income for 1981, 1982, and 1983 only $ 65,894, and not $ 70,100. Based on respondent's concession that Saghafi, Inc. made no adjustments to its officer's advance account or to any of its other books and records to reflect the settlement of the prior audits -- a fact independently supported *284 by our review of the books and records of Saghafi, Inc. that are part of the record in these cases and by the credible testimony of the accountants for the Saghafis and Saghafi, Inc. during the period 1984 through approximately mid-May 1988 -- we agree with petitioners and have found as a fact that the amount reflected in the officer's advance account was overstated by $ 70,100 as of January 1, 1987, and January 31, 1987. [26] That petitioners and the Service agreed in settling the prior audits that this $ 70,100 amount was to be discounted for purposes of that settlement does not change our conclusion or the fact that $ 70,100 of the officer's advance account was treated in that settlement as income to Dr. Saghafi. *285 Since the officer's advance account was overstated as of January 1, 1987, and January 31, 1987, by $ 70,100, the balances reflected in the officer's advance account as of those dates should be reduced by that amount. After such a reduction, we find that the balance in that account as of January 1, 1987, is $ 50,121.41 and that the balance in that account as of January 31, 1987 (prior to crediting that account in the amount of $ 99,545.30 to reflect declared wage amounts for Dr. and Ms. Saghafi) is $ 67,121.41. [27]
On the instant record, we find that respondent has not met her burden of proving that the $ 16,221.41 difference between the erroneous balance of $ 120,221.41 that was reflected in the officer's advance account as of January 1, 1987, and the $ 104,000.00 declared wage amount *286 for Dr. Saghafi for 1987 is includible in Dr. Saghafi's income for that year. The Saghafis agree that since the officer's advance account in fact had an accumulated balance greater than $ 70,100 as of January 1, 1987, they must include in their income amounts credited to that account after that date if the credits give rise to income taxable to them, such as a credit for declared wage amounts. However, they then focus on the credit to the officer's advance account to reflect the purported sale of the airplane on February 15, 1987, and argue that that credit, which eliminated the balance reflected in the officer's advance account, did not give rise to income taxable to Dr. Saghafi because it represented a tax-free return of his basis in the airplane. In focusing solely on the credit to the officer's advance account to reflect the purported sale of the airplane, petitioners have ignored the fact that Saghafi, Inc. credited that account on January 31, 1987, a date prior to the date of the purported sale of the airplane, to reflect its having a declared wage amount for Dr. and Ms. Saghafi in the amount of $ 106,000 ($ 104,000 to Dr. Saghafi, $ 2,000 to Ms. Saghafi) for its taxable *287 year ended January 31, 1987. After Saghafi, Inc. withheld Social Security and State and local taxes of $ 6,454.70 on that declared wage amount and reduced that amount by those withheld taxes, the balance of $ 99,545.30 was reflected as of January 31, 1987, as a credit to the officer's advance account. That credit of $ 99,545.30, when applied to what we have found as the balance of $ 67,121.41 in the officer's advance account as of January 31, 1987, [28] eliminates any balance in that account. On the instant record and in light of (1) the Saghafis' concession that credits to the officer's advance account after January 1, 1987, give rise to income to them and (2) our *288 rejection of their argument regarding the credit to that account as of February 1987 with respect to the purported airplane sale, we conclude that the balance of $ 67,121.41 we have found in the officer's advance account as of January 31, 1987, must be included in Dr. Saghafi's wages for 1987 and thus in the income of the Saghafis for that year. B. Payments Made to or on Behalf of Dr. Saghafi
We next address respondent's contention that the Saghafis' income for 1987 should be increased as a result of Dr. Saghafi's receiving $ 119,576.73 in cash payments from Saghafi, Inc. during that year and Saghafi Inc.'s having paid $ 12,586.70 in taxes on behalf of Dr. Saghafi during that same year. The parties stipulated to a series of cash payments received by Dr. Saghafi from Saghafi, Inc. during 1987 in the total amount of $ 119,576.73 and to the fact that Saghafi, Inc. paid taxes in the amount of $ 12,586.70 on behalf of Dr. Saghafi. Consequently, the parties stipulated to Saghafi, Inc.'s having paid to or on behalf of Dr. Saghafi a total of $ 132,163.43 during 1987. With respect to the $ 119,576.73 in cash payments Saghafi, Inc. made to Dr. Saghafi during 1987, respondent bears *289 the burden of proving that $ 17,250.73 of that amount ($ 119,576.73 less the $ 102,326.00 in the 1987 notice) is includible in the Saghafis' income for 1987. That $ 17,250.73 amount consists of the following cash payments from Saghafi, Inc. to Dr. Saghafi that were made on the dates indicated: Date
Check Number
Amount
01/02/87
2472
$ 11,000.00
01/14/87
2490
6,000.00
02/16/87
81.67
12/06/87
169.06
Total
$ 17,250.73
We have already held that, of that $ 17,250.73 amount, the $ 17,000.00 amount paid during January 1987 and reflected in the officer's advance account as of January 31, 1987, represented wages taxable to Dr. Saghafi for 1987. Consequently, we must decide whether the Saghafis' income for 1987 should be increased as a result of (1) Dr. Saghafi's having received $ 102,576.73 ($ 119,576.73 - $ 17,000.00) in cash payments from Saghafi, Inc. from February 1, 1987, through December 31, 1987, for which respondent bears the burden of proof with respect to $ 250.73 ($ 17,250.73 - $ 17,000.00), and (2) Saghafi Inc.'s having paid $ 12,586.70 in taxes on behalf of Dr. Saghafi during 1987 for which petitioners bear the burden of proof. By stipulating *290 that they received $ 119,576.73 in cash payments from Saghafi, Inc. during 1987, the Saghafis have stipulated to their receipt during that year of, inter alia, the remaining $ 250.73 in cash payments. Consequently, respondent has satisfied her burden of producing evidence that that $ 250.73 amount, in addition to the other $ 102,326.00 in cash payments Saghafi, Inc. made to Dr. Saghafi from February 1, 1987, through December 31, 1987, in respect of which the Saghafis have the burden of proof, is includible in the Saghafis' income for 1987. The Saghafis therefore must rebut respondent's contention as to the $ 250.73 amount and carry their burden as to the remaining $ 102,326.00 in cash payments they received during 1987. The Saghafis' sole argument is that $ 60,000 of the cash payments made by Saghafi, Inc. to Dr. Saghafi during 1987 was a payment for the airplane. The books and records of Saghafi, Inc. that are part of the record in these cases do not reflect any payments of cash related to the purported sale of the airplane during 1987. [29] Thus, the evidence presented by the Saghafis does not support their contention. Consequently, we find that the cash payments made by Saghafi, *291 Inc. to Dr. Saghafi during 1987 will not be reduced by $ 60,000. Based on the present record, our finding that the $ 102,576.73 in cash payments made by Saghafi, Inc. to Dr. Saghafi from February 1, 1987, through December 31, 1987, is not to be reduced by $ 60,000.00, and the Saghafis' failure to produce other evidence that those cash payments and the $ 12,586.70 in taxes paid by Saghafi, Inc. on behalf of Dr. Saghafi during 1987 should not be includible in his income for that year, we hold that, in addition to other amounts that we hold herein must be included in the Saghafis' income for 1987, they must include $ 115,163.43 in their income for that year. C. Discharge of the Officer's Loan Account
We next consider respondent's contention that Dr. *292 Saghafi was discharged during 1987 of the $ 24,775.43 balance reflected in the officer's loan account as of December 31, 1987, after that account was reduced by Dr. Saghafi's payment during 1987 of $ 9,111.97 in principal. Respondent bears the burden of establishing that that $ 24,775.43 amount is includible in the income of the Saghafis for 1987. The parties stipulated to the following: 27. Attached as Exhibit 28 is a copy of a loan amortization schedule for a loan from Saghafi, Inc. to Dr. Saghafi. The loan balance on January 1, 1987 was $ 33,887.40. Total payments made by Dr. Saghafi during 1987 were $ 12,537.84 (principal of $ 9,111.97 and interest of $ 3,425.87). 28. Dr. Saghafi's loan from Saghafi, Inc., referred to in stipulation paragraph 27. was discharged in 1987.
In their opening brief, petitioners argue that if we find that the purported airplane sale is not to be respected for Federal tax purposes, there was no discharge of the officer's loan account because the "only 'discharge' was a journal entry recording the airplane sale." At the time the 1989 notice was issued to Saghafi, Inc. and during petitioners' preparation for the trial of these cases, respondent *293 was challenging Dr. Saghafi's alleged sale of the airplane to Saghafi, Inc. Petitioners entered into stipulation 28 with full knowledge that the sale of the airplane was challenged by respondent. Any suggestion by petitioners that our holding that the purported sale of the airplane is not to be respected for tax purposes necessitates a finding that the balance in the officer's loan account was not discharged during 1987 would be a change to the parties' stipulation 28. By suggesting this change to stipulation 28 for the first time in their post-trial brief, petitioners are advancing a position that respondent was unable to develop for trial and that would prejudice respondent's case. Consequently, petitioners' suggestion on brief that the loan balance was not discharged if the airplane sale is not respected is a qualification or change to stipulation 28 that we will not permit under Rule 91(e). [30]Louisiana Land & Exploration Co. v. Commissioner, 90 T.C. 630, 648-649 (1988). *294 Based on the parties' stipulation 28, respondent has satisfied her burden of proof. Dr. Saghafi, and consequently the Saghafis, must include in income for 1987 $ 24,775.43 as a result of the discharge in that year of the balance reflected in the officer's loan account. [31]
D. Summary of Income of the Saghafis for 1987 Attributable to Saghafi, Inc.
Based on the record before us, we find that Dr. Saghafi received $ 207,060.27 in income from Saghafi, Inc. during 1987, consisting of (1) $ 67,121.41, the balance we have found in the officer's advance account as of January 31, 1987; (2) $ 115,163.43 paid by Saghafi, Inc. to or on behalf of Dr. Saghafi, consisting of $ 102,576.73 in cash payments from Saghafi, Inc. to Dr. Saghafi from February 1, 1987, through December 31, 1987, and $ 12,586.70 in taxes paid by Saghafi Inc. on behalf of Dr. Saghafi during *295 1987; and (3) $ 24,775.43 in income arising from the 1987 discharge of the amounts reflected in the officer's loan account. Dr. Saghafi reported in the Saghafis' original 1987 return only $ 150,000 in income from Saghafi, Inc. Consequently, the Saghafis must include an additional $ 57,060.27 in their income for 1987. IV. Income of Dr. Saghafi for 1988 Attributable to Saghafi, Inc.
Respondent concedes on brief that Dr. Saghafi's income for 1988 should not be increased by the $ 53,022 in additional wages reflected in the 1988 notice. Thus, respondent has conceded that there is no deficiency for Dr. Saghafi's 1988 taxable year. In his petition and on brief, Dr. Saghafi asserts that he overstated his income for 1988. Respondent rejects Dr. Saghafi's calculation in his opening brief of his overstatement of income for 1988 "on the grounds that it is not supported by the evidence". Other than rejecting Dr. Saghafi's calculation, respondent does not address Dr. Saghafi's assertion that he overstated his income for 1988. The parties stipulated that during 1988 Saghafi, Inc. paid to Dr. Saghafi or on his behalf a total of $ 105,822.00, including cash payments in the total amount *296 of $ 104,036.64. With respect to whether any of that $ 105,822 amount should not be included in his income for 1988, Dr. Saghafi raises as his sole contention that the $ 105,822 figure should be reduced by $ 23,300. In this regard, he argues that (1) $ 23,300.00 of the $ 104,036.64 in cash payments he received from Saghafi, Inc. during 1988 represented installment payments made under the installment note executed as part of the purported sale of the airplane, and (2) those installment payments were "not wages or other income to Dr. Saghafi", but represented a tax-free return of his basis in the airplane. We have held that the purported airplane sale is not to be respected for Federal tax purposes. Thus, Dr. Saghafi's contention that $ 23,300 of the cash payments he received from Saghafi, Inc. during 1988 represented a tax-free return of his basis in the airplane is without merit. Having disregarded the purported sale of the airplane for tax purposes, Saghafi, Inc. could not have been indebted to Dr. Saghafi for its purchase, and the installment note executed as part of that purported sale could not have established a debtor/creditor relationship between Saghafi, Inc. and Dr. *297 Saghafi. There is nothing else in the record that establishes that the installment note represented a debtor/creditor relationship between Saghafi, Inc. and Dr. Saghafi. We hold that the $ 105,822 in payments made by Saghafi, Inc. to or on behalf of Dr. Saghafi during 1988 will not be reduced by $ 23,300 as urged by Dr. Saghafi. We nonetheless find that Dr. Saghafi overstated his income for 1988. Based on the record before us, Dr. Saghafi reported in his original 1988 return his receipt of $ 108,750 in income from Saghafi, Inc., consisting of $ 107,000 in wages and $ 1,750 in alleged interest income, which alleged interest income is reflected in a cash activity summary, dated December 31, 1988, in the books and records of Saghafi, Inc. [32] However, Saghafi, Inc. paid during 1988 to or on behalf of Dr. Saghafi only $ 105,822. Thus, Dr. Saghafi overstated his receipt of income from Saghafi, Inc. during 1988 by $ 2,928. Consequently, he overreported his gross income and taxable income and overpaid his income tax for that year. *298 Pursuant to section 6512(a) and (b)(1), we have jurisdiction to determine the amount of a taxpayer's overpayment of income tax, if any, during the course of our addressing the issues raised in a taxpayer's petition. Pursuant to section 6512(b)(3), no credit or refund of the amount of such an overpayment is to be allowed or made unless we determine as part of our decision that the overpayment was paid -- (A) after the mailing of the notice of deficiency, (B) within the period that would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a refund claim had been filed (whether or not filed) stating the grounds upon which this Court finds that there is an overpayment, or (C) within the period that would be applicable under section 6511(b)(2), (c), or (d), in respect of any refund claim filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency -- (i) which had not been disallowed before that date, (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or (iii) in respect *299 of which a suit for refund had been commenced before that date within the period specified in section 6532.
The parties do not dispute that Dr. Saghafi filed the original 1988 return. Although the date of that filing is not disclosed by the record, the record does indicate that the original 1988 return was filed before Dr. Saghafi's 1988 refund claim was filed on October 30, 1991. In this connection, the parties do not dispute that the 1988 refund claim was timely filed. In response to a question in that claim as to whether the original return had been changed or audited, Dr. Saghafi responded in the affirmative. Respondent does not dispute the implications of that affirmative response, namely, that Dr. Saghafi filed the original 1988 return before October 30, 1991. Nor is there a dispute that Dr. Saghafi paid all of the tax relating to his 1988 taxable year prior to the filing of the 1988 refund claim. In this regard, the original 1988 return reflected on line 53 a total tax liability of $ 19,693 of which $ 15,500 was shown on line 54 as paid through withholding and $ 4,193 was shown on line 65 as tax due. Pursuant to section 6513(a) and (b)(1), the amount of tax shown *300 as paid through withholding is deemed paid on April 15, 1989. Although we do not know the date or dates on which Dr. Saghafi paid the $ 4,193 of tax due for 1988, the entire amount of tax paid by Dr. Saghafi for 1988 ($ 19,693) would have been paid within the three-year period immediately preceding the filing of the 1988 refund claim. Consequently, pursuant to section 6511(b)(2)(A), that entire amount potentially could be refunded to Dr. Saghafi. On March 27, 1992, the Service denied Dr. Saghafi's 1988 refund claim in the 1988 notice. Although we do not know whether the Service also denied the 1988 refund claim before March 27, 1992, if in fact that had been the case, under section 6532(a)(1), Dr. Saghafi could have commenced a timely suit for refund prior to that date. See sec. 6512(b)(3)(C)(ii). If in fact the only denial of the 1988 refund claim occurred on March 27, 1992, the date of the 1988 notice, obviously that refund claim would not have been disallowed before that date. See sec. 6512(b)(3)(C)(i). Based on the present record, we find that the overpayment of tax for 1988 by Dr. Saghafi that is attributable to the $ 2,928 overstatement of income that we have found for *301 that year was paid within the period that would be applicable under section 6511(b)(2)(A) in respect of the 1988 refund claim that was filed within the three-year period specified in section 6511(a) and before the mailing of the 1988 notice on March 27, 1992. See sec. 6512(b)(3)(C). We further find on the instant record that either the 1988 refund claim had not been disallowed before the notice of deficiency was mailed on March 27, 1992, or if it had been disallowed before that date, a timely suit for refund could have been commenced as of that date. See sec. 6512(b)(3)(C) (ii). [33]
V. Additions to Tax and Accuracy-Related Penalty
A. Additions to Tax for Negligence
Respondent determined that the Saghafis are liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1987. For 1987, section 6653(a)(1)(A) imposes an addition *302 to tax equal to five percent of the underpayment if any part of the underpayment was attributable to negligence. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Respondent determined that the entire amount of the Saghafis' underpayment for 1987 was due to negligence. "Negligence" includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The general rule is that the duty to file an accurate return cannot be avoided by placing responsibility on an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). However, under certain circumstances, a taxpayer may avoid the additions to tax for negligence by demonstrating *303 reasonable reliance on the advice of a professional or expert. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Reliance on an expert is not an absolute defense; it is only one factor to be considered. Freytag v. Commissioner, supra at 888. In the case of claimed reliance on an accountant who prepared the taxpayer's return, the taxpayer must establish that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Enoch v. Commissioner, 57 T.C. 781, 803 (1972). The Saghafis contend that the additions to tax for negligence should not apply because they relied on their tax accountants for advice. Other than asserting *304 their reliance on their tax accountants, the Saghafis do not address the applicability of the additions to tax for negligence in their briefs. The Saghafis have presented no testimony or other evidence that substantiates that they supplied their tax accountant all of the information that would have been needed to prepare their original 1987 return and/or that items incorrectly reported in that return were the result of their accountant's error. Id. In this regard, Mr. Ruschel, counsel for the Saghafis, is listed in the Saghafis' original 1987 return as the return preparer. At the calendar call for these cases, Mr. Ruschel requested that he be allowed to testify regarding petitioners' Exhibits 49 and 50, two business records of Saghafi, Inc.; at no point did Mr. Ruschel suggest that his proposed testimony would address preparation of the Saghafis' original 1987 return or the application of the additions to tax. Since Mr. Ruschel refused to withdraw as counsel, we denied Mr. Ruschel's request to testify. Rule 24(f). Having decided to retain Mr. Ruschel as their counsel herein, in lieu of allowing him to withdraw as their counsel and testify on their behalf, the Saghafis must *305 bear any consequences of Mr. Ruschel's failure to testify regarding his preparation of their original 1987 return. On the instant record, we find that the Saghafis have not met their burden of refuting respondent's determination that they are liable for 1987 for the additions to tax for negligence imposed by section 6653(a)(1)(A) and (B). We therefore sustain respondent's determination. B. Addition to Tax for Substantial Understatement of Income Tax
Respondent determined that the Saghafis are liable for 1987 for the addition to tax under section 6661(a). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown in the return or, in the case of individuals, $ 5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent it (1) is based on substantial authority or (2) is adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). What little argument appears in the Saghafis' briefs regarding the additions to tax set forth in the 1987 notice focuses solely on the addition to tax for negligence under section 6653(a)(1)(A) and (B). The Saghafis presented no evidence and made no argument *306 regarding respondent's determination under section 6661(a). Therefore, they have not met their burden of refuting respondent's determination that they are liable for 1987 for the addition to tax for a substantial understatement of income tax under section 6661(a). Consequently, if, after calculation of the income tax liability of the Saghafis for 1987 reflecting our holdings and the parties' concessions in these cases, there is a substantial understatement of income tax, respondent's determination will be sustained. C. Accuracy-Related Penalty
Respondent determined that Saghafi, Inc. is liable for 1989 for the accuracy-related penalty imposed by section 6662(a). She asserts that the entire underpayment of tax was to due to negligence or an intentional disregard of rules or regulations. "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income *307 Tax Regs.
The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Id. Reliance on the advice of a qualified adviser does not necessarily demonstrate reasonable cause and good faith unless, under all of the facts and circumstances, the reliance was reasonable and the taxpayer acted in good faith. Id.
Saghafi, Inc. contends that the accuracy-related penalty under section 6662 should not apply because it relied on its tax accountant for advice. Other than asserting its reliance on its tax accountant, Saghafi, Inc. does not address the applicability of the section 6662 penalty in its briefs. Saghafi, Inc. presented no testimony or other evidence that substantiates its claim that it supplied its tax accountant *308 all of the information that would have been needed to prepare its 1989 tax return and/or that items incorrectly reported in that return were the result of its accountant's error. See Ma-Tran Corp. v. Commissioner, supra at 173; Enoch v. Commissioner, supra at 803. In this regard, as discussed above with respect to the Saghafis, Mr. Ruschel who is listed as the preparer of the 1989 return filed by Saghafi, Inc. refused to withdraw as counsel for Saghafi, Inc. in order to testify about petitioners' Exhibits 49 and 50. We therefore did not allow him to testify. Rule 24(f). Saghafi, Inc. must bear any consequences of Mr. Ruschel's failure to testify regarding his preparation of its 1989 return. [34]
On the instant record, we find that Saghafi, Inc. has not met its burden of refuting *309 respondent's contention that it is liable for 1989 for the accuracy-related penalty under section 6662. We therefore sustain respondent's determination. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Mehdi Saghafi, M.D., Inc., docket No. 8004-92; and Mohammed Mehdi Saghafi, docket No. 8005-92.↩
2. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The parties filed a stipulation of facts (stipulation) and a first supplemental stipulation of facts and made an oral stipulation at trial regarding two exhibits. In the stipulation, respondent objected to the relevancy of two Forms 870-AD, Offers of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment, that were attached as exhibits to that stipulation. One Form 870-AD related to the Saghafis for their tax years 1981 through 1983; the other related to Saghafi, Inc. for its taxable years ended Jan. 31, 1982, Jan. 31, 1983, and Jan. 31, 1984. Although we believe that those forms are relevant, and thus overrule respondent's objection, the record contains other evidence with respect to the events and amounts involving those petitioners and tax years to which the Forms 870-AD relate on which we have primarily relied in addressing certain of the issues presented in these cases.↩
4. Ms. Saghafi is not a petitioner in docket No. 8005-92.↩
5. The parties' stipulation accepts that amounts reflected in the officer's loan account in fact represented amounts loaned to Dr. Saghafi by Saghafi, Inc. The parties have not stipulated that amounts reflected in the officer's advance account in fact represented amounts loaned to Dr. Saghafi by Saghafi, Inc. Therefore, our use herein of the words "advance", "advanced", and similar terms is for convenience only and does not necessarily reflect our view as to the nature of the transactions between Saghafi, Inc. and Dr. Saghafi that were reflected in the officer's advance account.↩
6. All amounts reflected on line 7 of the Saghafis' original 1987 return were reported as wages from Saghafi, Inc.↩
7. The second amended 1987 return differed from the first only in that it provided a more detailed explanation in support of the claimed refund arising from the asserted $ 50,000 reduction in reported gross income.↩
8. Facts relating to the purported sale of the airplane are set forth more fully below.↩
9. Facts relating to the officer's loan account are set forth more fully below.↩
10. Facts relating to the balances reflected in the officer's advance account are set forth more fully below.↩
11. Although the airplane expenses were reported as total amounts and were not separately categorized in the returns, the books and records of Saghafi, Inc. list the specific purposes for the airplane expenses, e.g., gas, airplane repairs, landing fees, and other items.↩
12. Respondent made other adjustments in the 1989 notice that Saghafi, Inc. concedes were proper.↩
13. The alleged interest payment of $ 1,750 is reflected in a cash activity summary, dated Dec. 31, 1988, in the books and records of Saghafi, Inc.↩
14. Our holding regarding whether the purported airplane sale is to be respected for Federal income tax purposes will be determinative of correlative issues relating to Dr. Saghafi's claim that he is entitled for 1987 to a loss on the purported sale and to Saghafi, Inc.'s claim that it is entitled for 1989 to a depreciation deduction for the airplane in the amount of $ 12,143.↩
15. It appears that respondent is referring to sec. 441(i). That section provides that, for tax years beginning after Dec. 31, 1986, the taxable year of a personal service corporation, such as Saghafi, Inc., must be a calendar year, unless the corporation can demonstrate a business purpose for having as its taxable year a different period.↩
16. Petitioners presented no additional evidence to support their alternative contention that the purported airplane sale occurred in 1988.↩
17. Since we have found that the purported airplane sale will not be respected for Federal tax purposes, (1) Saghafi, Inc. is not entitled to its claimed depreciation deduction for 1989 for the airplane, and (2) Dr. Saghafi may not claim for 1987 or 1988 a capital loss from the purported sale.↩
18. A taxpayer may be considered to be in a trade or business of being an employee separate and apart from the trade or business of his corporate employer. Noyce v. Commissioner, 97 T.C. 670, 683 (1991); Leamy v. Commissioner, 85 T.C. 798, 809↩ (1985).
19. Saghafi, Inc. attached a schedule to its return for its taxable year ended Dec. 31, 1989, outlining the calculation of its claimed $ 5,605 net operating loss deduction. We do not understand certain of the entries provided in that calculation, nor has Saghafi, Inc. provided an explanation for each entry.↩
20. The $ 58,247.27 alleged increase in income over that determined by respondent in the 1987 notice should actually be $ 58,247.57. The difference between $ 58,247.27 and $ 58,247.57 is due to the rounding of a figure used by respondent in the 1987 notice.↩
21. Respondent's litigating position here differs from the position taken by the Service in the prior audits of the Saghafis and Saghafi, Inc., viz., that amounts reflected in the officer's advance account for the years audited were not loans, but were compensation that was includible in Dr. Saghafi's income for the years during which the amounts of the so-called advances were paid to him.↩
22. No explanation appears in the record relating to the difference between the $ 150,000 in wages Dr. Saghafi reported in the Saghafis' original 1987 return and the $ 104,000 declared wage amount for Dr. Saghafi for 1987.↩
23. For taxable years of Saghafi, Inc. beginning after Jan. 31, 1987, the record does not indicate whether Saghafi, Inc. was consistent in treating certain cash payments made to Dr. Saghafi as advances debited to the officer's advance account. The record does show that on Jan. 31, 1988, Saghafi, Inc. did not appear to follow its prior practice of crediting the officer's advance account to reflect a declared wage amount paid to Dr. Saghafi. It thus appears that, for periods after Jan. 31, 1987, Saghafi, Inc. began to treat the officer's advance account in a manner different from the manner in which it had treated that account for periods prior to Feb. 1, 1987.↩
24. Respondent argues that the $ 17,000 in cash payments that Dr. Saghafi received in Jan. 1987 that were debited to the officer's advance account during that month should be included in the income of the Saghafis for 1987. While we agree with respondent that that amount should be included in the Saghafis' income for 1987, as discussed below, we arrive at that conclusion by way of an analysis different from that advanced by respondent.↩
25. For purposes of calculating the tax due on the $ 70,100 amount, the Saghafis and the Service agreed that that amount was to be spread equally over a five-year period beginning with 1981. It was further agreed that the amount allocated to each of the years 1984 and 1985, years that were not under audit, would be discounted at a rate of 10 percent per year, and those two discounted amounts would be added to the amount allocated to 1983 to reflect the total adjustment for that year. As a result, Dr. Saghafi was required to pay tax on a total of $ 65,894 in compensation income for the years 1981, 1982, and 1983.↩
26. Respondent's first two contentions (viz., (1) any "double taxation" of income to the Saghafis would have occurred for 1984, and (2) no legal theory exists "to support petitioners' claim that the officer's advance account was 'permanently reduced' as a result of the prior audit") miss the point. The issue we must resolve is whether the balances reflected in the officer's advance account as of Jan. 1, 1987, and Jan. 31, 1987, were in fact overstated. We have found as a fact that the balances reflected in that account on those two dates were overstated by $ 70,100.↩
27. This balance of $ 67,121.41 in the officer's advance account consists of the balance of $ 50,121.41 we have found in that account as of Jan. 1, 1987, and the $ 17,000.00 in additional debits made to that account during Jan. 1987.↩
28. The declaration of a wage amount in excess of $ 67,121.41 on Jan. 31, 1987, would have resulted in the officer's advance account reflecting a credit balance, which theoretically would represent a loan from Dr. Saghafi to Saghafi, Inc. We have no evidence that such a debtor-creditor relationship was in fact created or intended by those two parties.↩
29. The accounting journal entries in the books and records of Saghafi, Inc. reflecting the purported sale of the airplane (viz., entry AJE 2) reflect credits to the officer's advance account, the officer's loan account, and a note payable account, and not to cash.↩
30. Rule 91(e) provides that: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. * * *↩
31. Neither petitioners nor respondent argues that the income arising from the discharge of the officer's loan account in 1987 represents an additional wage amount.↩
32. In light of our holding regarding the purported airplane sale, cash payments to Dr. Saghafi that were designated by Saghafi, Inc. as interest under the installment note would not represent interest payments for Federal tax purposes. Nevertheless, since the cash activity summary of Saghafi, Inc. does reflect a payment of $ 1,750 in cash from Saghafi, Inc. to Dr. Saghafi, Dr. Saghafi bears the burden of establishing that that cash payment was not income. He has not satisfied that burden.↩
33. The amount of refund to which Dr. Saghafi is entitled for 1988 pursuant to our opinion is to be calculated by the parties as part of the Rule 155 computation.↩
34. Mr. Ruschel did not suggest that his proposed testimony would address preparation of the 1989 return filed by Saghafi, Inc. or the application of the accuracy-related penalty.↩